IN THE UNITED STATES DISTRCT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HERBERT J. SWENDER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GARDEN CITY COMMUNITY | ) |
| COLLEGE, RANDALL D. GRISELL, and | ) |
| DOERING, GRISELL & CUNNINGHAM, | ) |
| P.A. | ) |
| Defendants. | ) |
| | ) |
| | ) |

## COMPLAINT

Plaintiff Herbert J. Swender brings this action against Garden City Community College ("GCCC" or the "College") and attorney Randall D. Grisell for injuries arising from erroneous advice that the College and Mr. Grisell gave to Dr. Swender while Dr. Swender was President of Garden City Community College ("GCCC" or "the College"), and on which Dr. Swender relied to his detriment. Dr. Swender seeks compensation for (1) injury to his professional and personal reputation; (2) lost earnings resulting from his early separation from GCCC and his subsequent difficulty in finding other professional employment; (3) the loss of retirement and health benefits that resulted from GCCC's early termination of his employment.

## The Parties

Plaintiff Herbert J. Swender is a resident of Grove, Oklahoma. Dr. Swender is an educator who has worked in education for thirty-six years, eighteen of which as a community college president. Dr. Swender maintains a residential address 29506 S. 585 Court, Grove, Oklahoma, 74344.

1

Garden City Community College is a higher education institution located in Garden City, Kansas. Garden City Community College may be served by Summons to Dr. Ryan Ruda, President and CEO of Garden City Community College located at 801 Campus Drive, Garden City, KS 67846.

Upon information and belief, Randall D. Grisell is an attorney and was a resident of Garden City, Kansas. During Dr. Swender's tenure as President of the College, Mr. Grisell served as primary legal counsel for the college. At all relevant times, Mr. Grisell acted as an agent of the College. He can be served by Summons at 25462 W. 91st Street, Lenexa, Kansas, 66227-4307.

Upon information and belief, Randall D. Grisell was employed at Doering, Grisell & Cunningham, P.A. during Dr. Swender's tenure as President of the College. This firm can be served by Summons to the Registered Agent, Michael C. Doering, at 124 Grant, Garden City, Kansas, 67846

## Jurisdiction

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. Section 1332 as the Parties have complete diversity of citizenship and the amount in controversy exceeds $75,000.

## Factual Background

A. **Dr. Swender's tenure with GCCC**

Herbert Swender is a life-long educator. He holds professional credentials including: a Doctorate of Higher Education from Oklahoma State University; a Specialists Degree in education; a Master of Science degree; a Bachelor of Science degree; and an Associate of Arts

degree. He has successfully served in education and in higher education for over thirty-six years at four different colleges, with a combined eighteen years of experience leading two community colleges as president and CEO.

Dr. Swender has been recognized by national educational organizations, and has held prestigious committee leadership positions, including with the American Association of Community Colleges (AACC), Commission on Economic and Workforce Development; the Center for Legislative Energy and Environmental Research (a committee serving The Energy Council). In 2018, he was the recipient of the Autry Leader of the Year Award from the Rural Community College Alliance (Park City, Utah).

Dr. Swender has a considerable national profile in the education community and Economic Development circles. He has given numerous presentations and speeches, and was invited on three occasions—2012, 2013 and 2014—to share his opinions and present at the White House on issues relating to economic and rural development. Moreover, Dr. Swender is considered a leading authority on the Federal Pell Grant Program and was instrumental in providing critical data for US Senate and House Education Committee members involved with the reauthorization of Pell Grants in 2012.

Before becoming President at GCCC, Dr. Swender served as the president of Frank Phillips College in Borger, Texas. In January 2011, The Garden City Community College conducted a nationwide search for a new president, and invited Dr. Swender to take up the leadership of the school as its sixth president.  During Dr. Swender's tenure, he was instrumental in advancing GCCC's standing in numerous areas. Representative accolades and development milestones for the College include:

- CNN Money Magazine ranks GCCC among the top twenty-four community colleges in the US;

- GCCC is recognized by the Aspen Institute for College Excellence as being in the top ten percent in America—four years in a row;

- GCCC was ranked thirteenth out of the top fifty most affordable community colleges in the US;

- In 2013, GCCC was recognized for the first time as a "Military Friendly" college;

- GCCC's three-year graduation rate was thirty-seven percent during Dr. Swender's tenure—a figure considerably higher than the national average of twenty-two percent;

- GCCC had the most diverse student population of any school in Kansas during Dr. Swender's tenure;

- In 2016, GCCC established a military partnership with the Kansas Army and Air National Guard (2016). In addition, GCCC partnered in 2018 with Pittsburgh State University and its ROTC pathway, the only such program on a two-year community college campus.

- GCCC grew nearly eight percent during last four years of Dr. Swender's tenure as President, whereas the College's enrollment had been unchanged for the prior ten years. This increase represented one of the largest enrollments increases in the State of Kansas; and

- President Swender was instrumental in securing several millions of dollars in philanthropic gifts and competitive grants, as well as numerous facilities improvements. Property expansions and acquisitions included: a new property for the rodeo team; a new football stadium; construction of new student housing; and repurposed facilities for the College's music program.

1. The first in the series of lawsuits filed by Jean Lamfers was *Hoke, et al. v. Swender, et al.* This lawsuit was based on a deprivation of civil rights by Swender. The basis of the lawsuit was a call to action by the faculty senate committee. This was presented to the board by Phil Hoke.

    Phil Hoke in his sworn testimony testified that he had not reviewed this, nor did he know it to be factually correct or not to presenting it. In his deposition, Phil Hoke was unaware of the factual background of some of the allegations made in the faculty senate report. Phil Hoke's best understanding and belief of the faculty senate report was sent to the board without a careful review.

2. The next in line of lawsuits filed by Jean Lamfers was Tiumalu.

B. **The Douglass/Everett lawsuit**

On February 22, 2020, plaintiffs Antonia Douglass and Elizabeth Everett brough a lawsuit in this Court against the College and numerous school administrators, including Dr. Swender (the "Douglass/Everett Litigation"). *See Antonia Douglass et al. v. Garden City Community College et al.*, Case No. 2:20-cv-2076. In their lawsuit, plaintiffs asserted:

> This is a Title IX retaliation, Title IX discrimination and civil rights action seeking declaratory relief and damages against employees and officials of Garden City Community College and Garden City

5

> Police Department for depriving Plaintiffs Douglass and Everett of established constitutional and statutory rights. Plaintiff Everett seeks full redress as provided by law against identified Defendants, state actors, under 28 USC §§ 2201 and 2202 for declaratory and other relief; under Title IX for damages and other relief for the retaliation and hostile environment based on her sex violations; damages and other proper relief under 42 USC §§ 1983 and 1985 for the civil rights violations and civil rights conspiracy violations depriving Plaintiff of rights, privileges and immunities secured to her by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; and for deprivation of rights secured under the laws and Constitution of Kansas associated with her gender, her status as a student of Garden City Community College, her free speech, petition and associational rights, and her participation in the college's public offerings, benefits, and programs

**Ex. {A},** Douglass/Everett Litigation, Complaint, paras. 1-2.

Pertinent to this litigation, the plaintiff Antonia Douglass asserted that Dr. Swender had violated her due process rights by instituting a no trespass notice against her (the "No Trespass Notice"), which prevented her from freely being on the College campus—allegedly in retaliation for voicing complaints of having experienced sexual harassment at GCCC.

Specifically, Douglas asserted that:

> On April 25, 2018, without prior warning or even the courtesy of a phone call, the college had served Plaintiff Douglass an unwarranted and baseless No Trespass Notice.
>
> The No Trespass Notice was issued under the auspices of Defendant GCCC for effect, to intimidate and harass her, to surprise her, and to deter further comments by her and others who had spoken up at the April 10 trustees' meeting in support of female students who were being sexually harassed in violation of Title IX. Plaintiff Douglass expressed her opinion to Defendant Rodney Dozier, the GCCC police officer who served the Notice along with a GCPD officer who was unknown to Plaintiff, that Defendant Swender instigated the Notice, because it was just like him to do something like this. Swender exercised decisive control and was involved in final decision-making regarding Plaintiff's demands to withdraw the Notice, which were repeatedly denied.
>
> […]

> The timing was just a week before college graduation, knowing Plaintiff Douglass would be impacted by such an obtuse and not easily challengeable process, which impacted her liberty interests, associational rights, and natural rights as a citizen to attend a public ceremony at a state institution. On information and belief, there was and still is no administrative recourse in the college's policies and procedures for a member of the public to challenge the college's No Trespass Notice. Plaintiff Douglass asserts that was the point. Without recourse, the president of the college could see to it that her physical ties to students and the larger college community were severed, at least for the foreseeable future. Her due process and equal protection constitutional rights were violated, as well.
>
> In retaliation for Plaintiff Douglass' public statements, upon information and belief, Defendant Swender, Defendant Trustees, Defendant Dozier or individuals acting at their behest because of their state authority, used their positions in government to set in motion a series of events, described herein, leading directly to the night of April 25, 2018, when Defendants employed an "as applied" unconstitutional device to retaliate with the full weight of a government edict to attempt to intimidate and squelch Plaintiff's exercise of her constitutional rights to freedom of movement, association, speech and to petition government by their having issued a No Trespass
>
> Notice to banish her from college property and events. Defendants Dozier, Swender, and the trustee Defendants refused to lift the Notice on Plaintiff until July 27, 2018, and each day caused damage to her First Amendment and other civil rights.

**Ex. {B},** Douglass/Everett Litigation, Second Amended Complaint, paras. 152-56.

### C. Dr. Swender's decision to impose the No Trespass Notice

Dr. Swender imposed the No Trespass Notice on Antonia Douglass in response to the advice of the College's attorney, Randall Grisell. Mr. Grisell had advised Dr. Swender to follow this course of action because Dr. Swender consulted his chief of security, his human resources director and Mr. Grisell. All of them had indicated that a no trespass order should be imposed. Mr. Grisell drafted the no trespass order. He told Dr. Swender it was good and valid.

Subsequent to the no trespass order being entered, Jean Lamfers, on behalf of Ms. Douglass contacted Mr. Grisell and told him it should be rescinded. Grisell met again with the chief of security, human resources director and Dr. Swender, but did not say that the no trespass order could be invalid, constitutionally invalid, or subject then to litigation. Rather, Mr. Grisell indicated that they should rescind the no trespass order and then wait for her to come on campus and utilize a different means which was seemingly more aggressive to Dr. Swender.

Dr. Swender, upon inquiry into it is valid and it is what the chief of security believes that he will back his people. At no time did Grisell inform him that it was illegally impermissible to have a no trespass order without a termination date or a right of review. As litigation for Ms. Lambers continued, Dr. Swender felt that he was losing the ability to lead his faculty and the campus. There was an investigation under the faculty senate report, numerous pieces of litigation, and Dr. Swender felt the students were suffering. Upon negotiations with the board and Randall Grisell, on behalf of GCCC, Dr. Swender agreed to a resignation so long as he could finish the last two quarters of his KPERS thus increasing his average salary calculations and officially complete his Settlement, Separation & Consulting Agreement with GCCC January 1, 2019.

As President of the College, Dr. Swender was entitled to consult the advice of Mr. Grisell, who—as a lawyer for the College—owed him a duty of loyalty and professional competence in matters related to the College, and reasonably relied on the advice Mr. Grisell gave him. The College had an obligation to ensure that the legal advice Dr. Swender received in connection with his official duties at GCCC was accurate.

D.  **Dr. Swender's separation from GCCC**

On August 6, 2018, the College and Dr. Swender agreed to end Dr. Swender's formal employment relationship with GCCC, and instead decided to enter a consulting arrangement under which Dr. Swender would still perform work for the College, albeit as an independent consultant, not a public employee (the "Separation and Consulting Agreement"). **{*See* Ex. C}** {Agreement between GCCC and Dr. Swender}.

Upon receipt of Randy Grisell's email dated August 28, 2018, clearly after signing of the Separation and Consulting Agreement, Mr. Grisell's communication revealed GCCC Payroll Administrator "has been doing some work on Dr. Swender's employment status and how his KPERS contributions should be handled." Later in December a phone conversation with GCCC's benefits/payroll administrator revealed and confirmed that Swender was reported to KPERS by the college as last day of employment August 7, 2018. When Dr. Swender applied to the Kansas Public Employees Retirement System ("KPERS") for retirement benefits, he was informed that he would not be entitled to claim benefits under the plans in which he had been enrolled because the period during which he worked as a consultant for GCCC did not count nor satisfy as "employee" time working for the College. As a result, he would not be able to incorporate the length of service quarter calculations as originally agreed regarding his separation and KPERS retirement. KPERS calculated the highest 12 quarters of service, which included two quarters of 2015's lower quarter salary.

The parties to the Everett/Douglas litigation settled their claims on February 22, 2023. Although Dr. Swender was a party to the settlement agreement—and the claims against him were dismissed—he did not participate financially in the settlement and paid no money to the Plaintiffs.

E.  **Harm suffered by Dr. Swender**

Dr. Swender has suffered considerable harm to his professional and personal reputation by following Mr. Grisell's advice. Had Mr. Grisell and the College acted more prudently, Dr. Swender would not have imposed the No Trespass Order and would not have become embroiled in the Douglass/Everett litigation, which proved to be a proximate cause of Dr. Swender's need to separate from the College. The negative publicity that the lawsuit generated has made it considerably more difficult for Dr. Swender to find professional employment elsewhere—even though he is at the height of his career as an educational leader with significant successful executive experience. This has led to significant lost earnings. Moreover, he has also lost his eligible KPERS benefits, as explained above.

Because of Mr. Grisell's actions, Dr. Swender brings the following claims for relief:

## Count I
## Legal Malpractice

Plaintiff incorporates the foregoing as if fully set forth herein.

Determined to act lawfully and prudently, Dr. Swender consulted GCCC's attorney, Randy Grisell, who advised him to institute a no trespass order against Ms. Douglass. Dr. Swender relied on Mr. Grisell's advice to his detriment, as Ms. Douglass brought a claim against Dr. Swender for breach of her constitutional, civil, and due process rights. Mr. Grisell's advice directly and proximately caused Dr. Swender to become embroiled in litigation injurious to his professional and personal reputation and led to his premature separation from the College.

The College's legal advice—given through Mr. Grisell's erroneous guidance—constituted legal malpractice under Kansas law.

*First*, the College Mr. Grisell owed Dr. Swender—as GCCC's President—a duty to exercise ordinary skill and knowledge in rendering legal advice;

*Second*, Mr. Grisell and the College breached this duty by advising Dr. Swender to institute a no trespass order against Ms. Douglass, which lacked due process protections;

*Third*, there is a direct causal connection between (1) Mr. Grisell's erroneous advice; (2) Dr. Swender's institution of the no trespass order; (3) Ms. Douglass' initiation of the lawsuit; (4) Dr. Swender's premature separation from the College; and

*Fourth*, Dr. Swender has suffered harm to his professional and personal reputation; has had to prematurely terminate his employment with GCCC; and has suffered considerable financial losses including lost earnings and employment opportunities and lost KPERS benefits in an amount to be determined at trial, but which in any event are greater than $75,000.

## Count II
### Negligent Misrepresentation

Plaintiff incorporates the foregoing as if fully set forth herein.

The College and Randall Grisell owed Dr. Swender an obligation to give him accurate legal advice that would help achieve the College's objectives while at the same time protecting GCCC and Dr. Swender from legal liability.

In giving Dr. Swender erroneous legal advice about the no trespass order, the College and Mr. Grisell are liable for making negligent misrepresentations under Kansas law.

*First*, Mr. Grisell failed to exercise reasonable care or competence in communicating reliable and accurate information to Dr. Swender;

*Second*, Dr. Swender reasonably relied on the advice communicated to him;

11

*Third*, Dr. Swender was the intended recipient of the information that Mr. Grisell and the College gave him; and

*Fourth*, Dr. Swender suffered damages resulting from the erroneous information communicated to him. Specifically, he has suffered harm to his professional and personal reputation, has had to prematurely separate from GCCC, has suffered considerable financial losses including lost earnings and employment opportunities and lost KPERS benefits, in an amount to be determined at trial, but which in any event are greater than $75,000.

## Count III
## Breach of Contract

Plaintiff incorporates the foregoing as if fully set forth herein.

Defendant GCCC owed contractual duties to Dr. Swender based on the employment agreement that they entered when Dr. Swender first became President of the College.

A key element of Dr. Swender's agreement with the College was that GCCC would keep Dr. Swender employed and continue his quarters/years of reportable employment recognition with KPERS until which time the Settlement, Separation & Consulting Agreement was satisfied. By altering Dr. Swender's contract with a substantive change in employment/retirement final date calculations, his "final day of employment" was not as agreed, thus changing the Separation and Consulting Agreement. The College vitiated this commitment, causing Dr. Swender to incur substantial financial losses. The College's actions amount to a breach of contract under Kansas law.

*First*, the College and Dr. Swender executed an employment agreement when Dr. Swender first entered service as President of the College in 2011;

*Second*, Dr. Swender was willing and able to perform the contact as originally contemplated by the parties;

*Third*, GCCC breached the contract by instituting the Separation and Consulting Agreement in such a way as to cause Dr. Swender to lose his full eligible retirement calculations from KPERS;

*Fourth*, Dr. Swender suffered damages resulting from the breach amounting to lost KPERS benefits in an amount to be determined at trial, and the lost opportunity for continued KPERS covered life insurance as an employee. In addition, Dr. Swender surrendered his benefit of continued GCCC health insurance coverage in accordance with the institutional practice until his further employment or age 65, which in any event are greater than $75,000.

## **PRAYER FOR RELIEF**

In view of the foregoing, Plaintiff Herbert J. Swender asks the Court to award him compensation, including damages for injuries to his personal and professional reputation, lost opportunity for continued family health insurance coverage; the College's non reporting of his actual quarters of service as agreed, thus making submission of his earned KPERS retirement calculations erroneous.   The hundreds of hours of preparation for legal defense, as well as, being directly involved with numerous depositions and associated legal travel costs. Most damaging are costs to his personal health and stress of defending his highly successful career as a president underpinned with his distinguished reputation with state and national legislators. Dr. Swender was considered a national authority in Economic Development, Energy, Community and Technical Colleges Education, public policy on education, and clearly his reputation in Sr.

Colleges and Universities across the nation has been impugned. The lasting effect of false and negative commentary regarding Dr. Swender's reputation are now memorialized on social media.

                                              Respectfully submitted:

                                              */s/Ronald P. Pope*
                                              Ronald P, Pope, #11913
                                              RALSTON, POPE & DIEHL, LLC
                                              2913 SW Maupin
                                              Topeka, Kansas 66614
                                              Phone:  785-273-8002
                                              Fax:  785-273-0744
                                              ron@ralstonpope.com
                                              *Attorneys for the Plaintiff*