## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HERBERT J. SWENDER,

        Plaintiff,

    vs.

GARDEN CITY COMMUNITY COLLEGE,
RANDALL D. GRISELL, and
DOERING, GRISELL & CUNNINGHAM, P.A.,

        Defendants.

Case No.  23-cv-04067

## GARDEN CITY COMMUNITY COLLEGE'S MOTION TO DISMISS

### Summary of Motion

On August 6, 2018, Plaintiff, a former employee of Garden City Community College ("GCCC"), signed a release in exchange for a consulting contract and the promise of a severance. He now sues in tort for two things that happened before he signed the release. He also has sued in contract for an agreement that does not appear in his written release agreement, claiming this is what he was owed under his 2011 contract that had been terminated for years and his 2017 contract that was explicitly terminated in the 2018 release. His claims must be dismissed.

Plaintiff did not give notice required under K.S.A. 12-105b(d) that he wished to bring tort claims against the community college, which Kansas law defines as a "municipality." This deprives this court of jurisdiction over Count I ("legal malpractice") and Count II ("negligent misrepresentation"), so they must be dismissed.

He also has sued for torts more than two years after they first allegedly caused substantial injury and for breach of what must have been an oral agreement more than three years after it was breached. His claims are all barred by the statute of limitations.

In addition, he has sued the college for two torts for which he has failed to allege facts sufficient to withstand a motion to dismiss. In Count I, he sued the college, which is not an attorney, for legal malpractice. In Count II, he sued the college for negligent misrepresentation, claiming that someone other than the college misrepresented advice, not facts. Neither of these state a claim.

**Facts[1]**

1.    Garden City Community College (hereinafter "GCCC") is a community college located in Garden City, Kansas. (Doc 15, ¶3)

2.    The First Amended Complaint does not allege that Defendant Grisell is an employee of GCCC.

3.    Plaintiff was hired to serve as President of GCCC on July 1, 2011. (Doc. 15, ¶45 and Ex 1, the 2011 employment contract[2])

4.    During 2018, until the signing of the new agreement referenced below, Plaintiff's employment was pursuant to the "Employment Contract Garden City Community College President" dated July 1, 2017, and an addendum dated December 12, 2017. (Ex. C to Doc 15, first page[3].)

5.    On April 25, 2018, Antonia Douglass, who eventually sued both Plaintiff and GCCC, was served a "no trespass notice." (Doc 15, ¶15)

6.    On August 6, 2018, GCCC and Plaintiff agreed to end the "formal employment relationship" with GCCC. (Doc 15, ¶20)

---

[1] These facts are from the First Amended Complaint. Defendant GCCC agrees to them for purposes of this motion only because of the standard of review for motions to dismiss.

[2] The 2011 and 2017 contracts are both cited in the First Amended Complaint, so Defendant GCCC may attach them and the court may consider them on a motion to dismiss if there is not an objection to their authenticity. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.* 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] The exhibit was filed with two layers of file stamp so that the current page numbers are illegible.

7.     According to Plaintiff, the issuance and then retraction of the "no trespass notice" to Ms. Douglass was "a proximate cause of his need to separate from the college." (Doc. 15, ¶23.)

8.     According to the First Amended Complaint, Ms. Douglass filed a lawsuit against Plaintiff and GCCC on February 22, 2020. (Doc. 15, ¶14.)

9.     GCCC and Plaintiff entered into a written agreement titled "Settlement, Separation and Consulting Agreement" ("Settlement Agreement") on August 6, 2018. (Doc 15, Ex. C)

10.     That agreement noted that Plaintiff had been employed pursuant to the employment contract and addendum referenced above and stated:

> WHEREAS, the parties desire to (i) terminate the Employment Contract pursuant to paragraph 6(A) of the Employment Contract and the terms and conditions set forth herein, and (ii)provide for certain other matters, upon the terms and conditions set forth herein.

11.     The Settlement Agreement provided:

> Upon the effective date of this agreement, Swender shall cease serving as President of GCCC and shall hold no executive or administrative position or title with GCCC. Swender shall remain a regular employee of GCCC to provide consultation services as the Board may reasonably request through January 1, 2019 at which time Swender's employment with GCCC and the Employment Contract [heretofore identified as the 2017 contract and its addendum] shall terminate. The board will not provide Swender an office on the GCCC campus or at any other location. The Board shall continue to pay Swender and Swender shall be entitled to receive his present salary and benefits through January 1, 2018[sic]. Such payments shall not be subject to any reduction or setoff. Swender's continued employment through January 1, 2019 and the Employment Contract shall not be subject to earlier termination for any reason whatsoever.

(Ex C, first page)

12.     The Settlement Agreement did not refer to KPERS or to any agreement relating to KPERS. (Ex. C to First Amended Complaint)

13.     The Settlement Agreement stated:

> Except for the obligations of this Agreement, and except as is otherwise provided in this Agreement, Swender shall and does hereby release and

3

> forever discharge the Board, as a body and its respective successors, predecessors and assigns from any and all actions, causes of action, suits proceedings, debts due, contracts, demands, liabilities, losses, damage, costs and expenses of any nature whatsoever, at law or in equity, which Swender may now have, for or by reason of any matter, cause or thing whatsoever, whether known or unknown, arising out of or in any way in connection with the Board's employment of Swender.

(Ex C to First Amended Complaint)

14. According to the First Amended Complaint, Plaintiff learned in a phone call in December 2018 that the GCCC had reported to KPERS that his last day of employment was August 7, 2018. (Doc. 15, ¶21)

**Issues Presented**

1. Should the tort claims against GCCC, a municipality, be dismissed because Plaintiff's failure to comply with K.S.A. 12-105b(d) deprives this court of subject matter jurisdiction over them?

2. Did the release signed by Plaintiff and dated August 6, 2018, release GCCC from the tort claims alleged against it in this lawsuit?

3. Did the release signed by Plaintiff and dated August 6, 2018, terminate his prior contract and release GCCC from any claims based on that or any other prior contract?

4. Are Plaintiff's claims barred by the statute of limitations?

5. Does Count I for legal malpractice state a claim against an educational institution?

6. Does Count II for negligent misrepresentation state a claim against GCCC when it refers only to advice and not to factual allegations that were supposedly misrepresented and when GCCC itself is not alleged to have made any misrepresentations?

**Arguments and Authorities**

**A.     Plaintiff's tort claims must be dismissed because he did not comply with K.S.A. 12-105(b).**

Kansas statutes require that before suing a municipality in tort, a plaintiff must provide statutorily required notice. K.S.A. 12-105b(d). Failure to do so deprives the court of subject matter jurisdiction. *McLinn v. Thomas Cty. Sheriff's Dept.*, 535 F.Supp. 3d 1087, 1108 (D. Kan. 2021).

GCCC is a municipality. K.S.A. 10-1101(a). Plaintiff has not alleged that he gave the required notice before filing his tort claims against a municipality, so this court must dismiss those claims.

**B.      The claims against GCCC are barred by the release attached as Ex. C to the First Amended Complaint.**

Plaintiff alleges that he got bad legal advice, which caused him to participate in issuing the future litigant Ms. Douglass a No Contact Order on April 25, 2018.  He signed the Settlement Agreement on August 6, 2018. That release released and forever discharged GCCC from:

> any and all actions, causes of action, suites, proceedings, debts due, contracts, demands, liabilities, losses damages, costs and expenses of any nature whatsoever, at law or in equity, which Swender may now have, for or by reasons of any matter, cause or thing whatsoever, whether known or unknown, arising out of or in any way in connection to the Board's employment of Swender.

The claims in this lawsuit all arose before Plaintiff executed the release contained in the Settlement Agreement.

**1.      The tort claims are barred by the release included in the Settlement Agreement.**

Count 1 alleges "legal malpractice" against GCCC for the advice that led to the No Contact Order. Because the advice had to precede the issuance of the Order that the First Amended Complaint says occurred April 25, 2008, the advice must have come before that. Count 2 alleges "negligent misrepresentation" arising out of the same events. Both of those claims should be barred by the express language of the release, as both arose from incidents that occurred prior to the Settlement Agreement being signed. As discussed in the statute of limitations section below, by

August, 2018 Plaintiff alleges that he knew that the advice and his reliance on it led to his need to separate from the college. Because the Settlement Agreement was signed at that time, it waived any claims based on that advice.

> **2.   The contract claim is barred by the release and because there is no written agreement that says what he claims.**

Count 3 alleges that "GCCC owed contractual duties to Dr. Swender based on **the employment agreement that they entered when Dr. Swender first became President of the College." (**Doc. 15 at p. 14, ¶40.) He identifies the breach as having occurred when GCCC and he "institute[ed] the Separation and Consulting Agreement" and that this was a breach *of his original 2011 contract*. (Doc. 15, p. 13, ¶45.) If the breach occurred when he entered the Settlement Agreement, then by its plain language, any claim for that breach was waived by that agreement.

He also alleges that in negotiations prior to signing the Separation and Consulting Agreement in August 2018, he "agreed to a resignation so long as he could finish the last two quarters of his KPERS thus increasing his average salary calculations and officially complete his Settlement, Separation and Consulting Agreement with GCCC January 1, 2019." (Doc. 15, ¶18). That "agreement" is not contained in his Ex. C, the agreement he signed after these alleged negotiations. The Settlement Agreement had a "merger clause," on page 3 that said, "This agreement constitutes the entire understanding of the parties and there are no other oral or written understandings between them relating to the subject matter of this Agreement."  Kansas law is clear that whatever negotiations he thought were agreed to prior to signing a contract were merged into or replaced by the later written contract. *See, e.g., Aerotech Aviation Design v. Otto Aviation Group, LLC,* No. 15-1373-EFM-TJJ, 2017 U.S. Dist. LEXIS 58848, *20, n. 35 (D.Kan. April 18, 2017).

> **C.   Plaintiff's claims are barred by the statute of limitations.**

1.        **Tort claims are barred by the statute of limitations.**

Plaintiff alleges that he was given bad legal advice to issue the No Contact Order in 2018, that the No Contact Order was withdrawn almost immediately and that his following the alleged bad advice "proved to be a proximate cause of [his] need to separate from the College" in August 2018 and also led to his being sued on February 22, 2020, for actions he took while allegedly heeding that advice. He filed this claim on August 2, 2023, which is more than two years after the alleged bad advice/negligent misrepresentation first caused him "substantial injury," whether that injury is defined as his "need to separate from the college" or his being named as a defendant in a civil rights lawsuit and having to defend himself. The statute of limitations on tort actions is two years from when an action causes "substantial injury." K.S.A. 60-513.

The Kansas Supreme Court has defined knowledge of "substantial injury" in the statute as having "sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent." The phrase "substantial injury" in K.S.A. 60-513(b) means **any** injury that would be actionable.  *Roe v. Diefendorf,* 236 Kan. 218, 222-23, 689 P.2d 855 (1984).

Plaintiff has sued GCCC for "legal malpractice" because its own attorney gave advice on which he claims he relied to his detriment. The law on legal malpractice statutes of limitations is a case by case decision, but under any analysis, the claim had run before this was filed. *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, 264 (1991) reminds us of the four different times a malpractice claim could be triggered:

(1) The occurrence rule—the statute began to run at the time Plaintiff was advised to issue the No Contact order and then it was withdrawn.

(2) The damage rule—the time Plaintiff was "caused" to "need to separate from the College" or even the time he was sued and knew he would have to defend against litigation.

(3) The discovery rule—the time he discovered or should have discovered the material facts essential to his cause of action against the attorney, namely, that the No Contact order should not have been issued. According to Plaintiff, that was within days of the No Contact order because it was withdrawn almost immediately and because the lawsuit filed in 2020 specifically called out the constitutional infirmities.

(4) The continuous representation rule—Plaintiff was not a client of Grisell, so this does not apply. This was obvious to Plaintiff when he negotiated against Grisell for his departure from service.

Plaintiff suffered injury when he knew he would have to defend a lawsuit based at least somewhat on the advice he received in February, 2020, when he alleges he was sued by Ms. Douglass. He learned in that lawsuit, if not before, that there may have been constitutional irregularities in the No Contact order. This lawsuit was filed more than two years after that date. The tort claims are barred.

## 2.    Contract claim is barred by the statute of limitations.

The statute of limitations on a breach of contract claim runs from the breach. Swender alleges that he should be able to "incorporate the length of service calculations *as originally agreed* regarding his separation and KPERS retirement." (Doc. 15, ¶21) The "agreement" about which he has sued does not appear in the written Settlement Agreement.  According to the First Amended Complaint, GCCC reported his last day as an employee as August 8, 2018 and he learned of that

in December 2018. (Doc. 15, ¶21) Whatever oral agreement they made merged into their written agreement, but if there were an oral contract, the statute of limitations ran three years after the breach, which would have been in August 2018. This suit was not filed until August 2, 2023—four years later.

### D.   Plaintiff fails to state a claim for "legal malpractice" against the non-lawyer GCCC.

The elements of a "legal malpractice" claim are "(1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage." *Canaan v. Bartee*, 276 Kan. 116, 72 P.3d 911 (2003), *cert. denied* 540 U.S. 1090 (2003). GCCC is not an attorney or a law firm, so Plaintiff cannot bring a claim against it for "legal malpractice." The First Amended Complaint does not plead any vicarious liability theory that would make GCCC, the client, liable for the quality of the advice of its lawyer to GCCC's employee. This claim against GCCC must be dismissed.

### E.   Plaintiff fails to state a claim for "negligent misrepresentation" against GCCC.

Kansas law is that the elements of a negligent misrepresentation claim are:

> One who, in the course of his profession, supplies false information for the guidance of another person in such other person's business transactions, is liable for damages suffered by such other person caused by reasonable reliance upon the false information if:
> 1. The person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating the false information; and,
> 2. The person who relies upon the information is the person or one of a group of persons for whose benefit and guidance the information is supplied. and,
> 3. The damages are suffered in a transaction that the person supplying the information knew that another intended to influence. PIK 127.43

The only representation mentioned in Count II are that Dr. Swender was not given "accurate legal advice" by Attorney Grisell. His allegations do not include any statements or representations by GCCC. They do not specify who from GCCC made misrepresentations, he just blithely includes "and the college" in his allegations about Attorney Grisell's advice. This is reason enough to dismiss the claims against GCCC.

But a negligent misrepresentation claim should not be based solely on advice, because "only facts, not opinions can be actionably false." *Mellon v. Int'l Grp. For Historic Aircraft Recovery*, No. 14-8062, 2015 U.S. App. LEXIS 8720, *3 (10th Cir. May 27, 2015). Whether misrepresentations are of present fact or of opinion is a question of law. *Bittel v. Farm Svcs. of Central Kansas, P.C.A.*, 265 Kan. 651, 665, 962 P.2d 491 (1998). The First Amended Complaint does not specify any "false information" that Swender received from GCCC. It merely states that a No Contact Order was issued and then rescinded and that a litigant said in later litigation that she suspected Swender was behind it because it "was just like [him] to do something like this." None of the elements of an actionable negligent misrepresentation claim have been alleged against GCCC and this claim should be dismissed.

Respectfully submitted,


/s/ *Gaye B. Tibbets*
Gaye B. Tibbets, #13240
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: tibbets@hitefanning.com
*Attorneys for Defendant*
*Garden City Community College*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of October, 2023, I electronically filed the foregoing *Defendant Garden City Community College's Motion to Dismiss* with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Gaye B. Tibbets*
Gaye B. Tibbets